IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH J. TOMASSO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE BOEING COMPANY | : | NO.  03-4220 |

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                                                         August 24, 2007
United States Magistrate Judge


        Presently before the court is defendant's Motion to Alter Judgment or, in the

Alternative, For a New Trial, with a memorandum of law in support of its motion (Doc. No. 80)

(the "Motion").  Plaintiff filed a Memorandum of Law in Opposition to the Motion (Doc. No.

92).  Oral argument was presented on May 25, 2007.  The matter is now before the court for

decision.  For the reasons stated herein, defendant's Motion is denied.

## I.      BACKGROUND

        Plaintiff Joseph J. Tomasso ("plaintiff") filed the instant action against his former

employer, defendant The Boeing Company ("defendant"), alleging that defendant terminated his

employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

261, et seq.  The case was tried before a jury for five days, from March 16, 2007 through March

22, 2007.

         The jury returned a verdict in plaintiff's favor on the age discrimination claim,

awarding back pay in the amount of $261,539 and front pay in the amount of $113,200.  See Jury

Interrogatory Form (Doc. No. 77).  The jury also found in favor of plaintiff on the question of

willful discrimination under the ADEA.  Id.  Accordingly, liquidated damages were awarded.  Id.

The court thereby entered judgment in favor of plaintiff and against defendant in the total amount

of $636,278 (Doc. No. 79).

Defendant posits the following arguments as the bases for its present Motion: (1)

the court erred as a matter of law in refusing to instruct the jury on the doctrine of withdrawal

from the employment market as an alternative method of defendant meeting its burden of proof

on its failure to mitigate defense; (2) the jury's apparent conclusion that the position of Precision

Inspector offered to plaintiff was not substantially equivalent to his position as a Procurement

Quality Specialist, and that plaintiff was not obligated to mitigate his damages by accepting that

position, was against the clear weight of evidence; (3) plaintiff's pension benefits should be

applied to reduce the amount of the jury's back pay award;[1] and (4) the court should vacate the

jury's front pay award and order that plaintiff be reinstated to an appropriate position with The

Boeing Company.  In the Motion, defendant asks the court, alternatively, to enter an order

altering the judgment pursuant to Fed. R. Civ. P. 59(e) or for a new trial pursuant to Fed. R. Civ.

P. 59(a).

---

[1]     In an Order dated March 16, 2007, the court granted plaintiff's motion in limine in part, finding it proper to instruct the jury that unemployment compensation, social security benefits and pension benefits should not be deducted from an award of back pay.  See Doc. No. 69.  Defendant's current Motion is denied to the extent that it requests that plaintiff's pension benefits be applied to reduce the amount of his back pay award.

## II.      LEGAL STANDARDS

### A.      Motion to Amend Judgment

Fed. R. Civ. P. 59(e) permits the filing of a motion to alter or amend a judgment. A motion under Rule 59(e) is a "device to relitigate the original issue" decided by the court, and used to allege legal error.  United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003) (citing Smith v. Evans, 853 F.2d 155, 158-59 (3d Cir.1988)).  A judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available previously; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)).

Because of the courts' interest in the finality of judgments, motions for reconsideration should be granted sparingly.  United States v. Bullock, 2005 WL 352854, at *1 (E.D. Pa. Jan. 24, 2005).  "Mere dissatisfaction with the Court's ruling is not a proper basis for reconsideration."  Id. (citing Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)).  "A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one."  Kennedy Indus., Inc. v. Aparo, 2006 WL 1892685, at *1 (E.D. Pa. July 6, 2006).  It is "is improper . . . to ask the court to rethink what it had already thought through – rightly or wrongly."  Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

B.      **Motion for New Trial**

Defendant also has moved for a new trial as an alternative to its motion to alter

judgment.  Fed. R. Civ. P. 59(a) sets forth the grounds on which the court may grant a motion for

a new trial:

> A new trial may be granted to all or any of the parties and on all or part of the
> issues (1) in an action in which there has been a trial by jury, for any of the
> reasons for which new trials have heretofore been granted in actions at law in
> courts of the United States. . . .

Fed. R. Civ. P. 59(a)(1).  Under the law of this Circuit "'[a] new trial is appropriate only when

the verdict is contrary to the great weight of the evidence or errors at trial produce a result

inconsistent with substantial justice.'"  Justofin v. Metro. Life Ins. Co., 2005 WL 758247, at *3

(E.D. Pa. Apr. 1, 2005) (quoting Sandrow v. United States , 832 F. Supp. 918, 918 (E.D. Pa.

1993)).  When the basis of the motion for a new trial is an alleged error involving a matter within

the discretion of the trial court, such as the court's evidentiary rulings or jury instructions, the

trial court has wide discretion in ruling on the motion.  Id.  See also Wagner v. Fair Acres

Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995) (decision whether to grant a new trial is

committed to the sound discretion of the trial court).

The court's discretion to grant a new trial is more limited when the asserted

ground is that the verdict is against the weight of the evidence.  In that instance, the Third Circuit

Court of Appeals has stated that "'new trials because the verdict is against the weight of the

evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage

of justice or where the verdict, on the record, cries out to be overturned or shocks our

conscience.'"  Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999) (quoting Williamson

v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991)).  It is not a proper basis to grant a

new trial merely because the court would have reached a different verdict.  Kotas v. Eastman

Kodak Co., 1997 WL 570907, at *7 (E.D. Pa. Sept. 4, 1997), aff'd, 166 F.3d 1205 (3d Cir. 1998)

(Table).

III.     **DISCUSSION**

A.       **Jury Instruction Regarding Plaintiff's Withdrawal from the Workforce**

Defendant requested that the court, as part of its charge to the jury, instruct the

jury regarding the effect of plaintiff's "complete withdrawal from the workforce."  (Mot. at 3-6.)

Defendant argues that the court's refusal to include an instruction on this issue was an error of

law.  As a result, defendant contends that the court should either amend the judgment and reduce

the amount of back pay and liquidated damages, or order a new trial.

With respect to a jury charge, a trial court has substantial discretion "to select the

language to be used in instructing the jury on the law so long as the judge's instructions are

correct and do not omit essentials."  United States v. Tiller, 302 F.3d 98, 105 (3d Cir. 2002).  See

also Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995) ("No litigant has a right to a jury

instruction of its choice, or precisely in the manner and words of its own preference.").  When a

party claims that a jury instruction was erroneous as a matter of law, the court will review the

charge to determine whether the instructions "taken as a whole, properly appraises the jury of the

issues and the applicable law."  Montgomery County v. Microvote Corp., 320 F.3d 440, 445 (3d

Cir. 2003) (citations omitted); see also Dresseler v. Busch Entm't Corp., 143 F.3d 778, 780 (3d

Cir. 1998) (holding that jury instructions should be reviewed by "totality of the charge given to

the jury, not merely a particular paragraph or sentence").  When the basis for seeking a new trial

is an alleged error in the court's jury instructions, the error must be "so substantial that, viewed in light of the evidence in the case and the charge as a whole, the instruction was capable of confusing and thereby misleading the jury." Link v. Mercedes-Benz of North Am., Inc., 788 F.2d 918, 922 (3d Cir.1986).

The substance of the jury instruction at issue concerns plaintiff's duty to mitigate his damages. In an ADEA case, the plaintiff has a duty to mitigate his losses, but the employer has the burden of proving the plaintiff's failure to mitigate. Booker v. Taylor Milk Co., Inc. 64 F.3d 860, 864 (3d Cir. 1995). To meet its burden of proving a failure to mitigate, an employer must demonstrate that (1) substantially equivalent work was available, and (2) the claimant did not exercise reasonable diligence to obtain the employment.[2] Id. The employer does not need to show that the plaintiff would have secured adequate interim employment, for the employer meets its burden on the mitigation issue by showing that the employee has withdrawn from the employment market. Tubari Ltd., Inc. v. NLRB, 959 F.2d 451, 454 (3d Cir. 1992). Thus, "where the employer demonstrates that an employee did not exercise reasonable diligence in his or her efforts to secure employment, then it has established that the employee has not properly mitigated his or her damages." Id.

In a recent unpublished opinion, the Third Circuit Court of Appeals addressed a plaintiff's duty to mitigate damages. Caufield v. The Center Area School Dist., 133 Fed. Appx. 4 (3d Cir. 2005) (not precedential). In Caufield, the employer argued that the plaintiff failed to

---

[2]    In Tubari Ltd., Inc. v. NLRB, the Third Circuit described the employer's burden as follows: "An employer can meet this burden . . . by, inter alia, establishing that the employee has willfully incurred losses through unjustifiably refusing adequate interim employment." 959 F.2d 451, 453-54 (3d Cir. 1992).

exercise reasonable diligence to secure substantially equivalent positions and consequently that

she had withdrawn from the employment market.  Id. at *4.  Under the facts of that case, the

Third Circuit found that to prove a failure to mitigate, the defendant had to prove either that other

substantially equivalent positions were available to the plaintiff and she failed to use reasonable

diligence in attempting to secure those positions, or that the plaintiff withdrew entirely from the

employment market.  Id.  The court further noted that "generally, a plaintiff may satisfy the

reasonable diligence requirement by demonstrating a continuing commitment to be a member of

the work force and by remaining ready, willing, and available to accept employment."  Id. at *5.

   In preparing its instructions to the jury in the case at bar, the court relied in part

upon the Third Circuit's Model Civil Jury Instructions (the "Model Instructions"), adapting the

Model Instructions as necessary.  See Model Civil Jury Instructions, Chapter 8, "Instructions for

Claims under the Age Discrimination in Employment Act."  With respect to damages for back

pay, the Model Instructions contain a paragraph that addresses a plaintiff's duty to mitigate his

damages.  Consistent with the Model Instructions, this court stated the following to the jury:

> You are further instructed that plaintiff has a duty to mitigate his damages – that is
> plaintiff is required to make reasonable efforts under the circumstances to reduce
> his damages.  It is defendant's burden to prove that plaintiff has failed to mitigate.
> So if defendant persuades you, by a preponderance of the evidence, that plaintiff
> failed to obtain substantially equivalent job opportunities that were reasonably
> available to him, you must reduce the award of damages by the amount of wages
> that plaintiff reasonably would have earned if he had obtained those opportunities.

(Jury Instructions at 18.)  Defendant, however, requested that in addition to the aforementioned

instruction, the court expressly discuss with the jury its argument that plaintiff failed to mitigate

his losses by withdrawing from the employment market.[3]

Defendant was free to present to the jury its argument that plaintiff had withdrawn

from the employment market as part of its case on mitigation.  Contrary to defendant's

assertions, however, to give the requested instruction would have improperly injected

defendant's argument into the court's instructions to the jury and would have resulted in an

unbalanced charge on the mitigation issue.[4]  Rather, the court in its discretion chose to instruct

the jury on the issue of mitigation without highlighting one aspect of the mitigation issue –

defendant's argument that plaintiff had withdrawn from the workforce.  The jury charge, taken as

---

[3]      Defendant's proposed jury instruction on mitigation included, in relevant part, the following paragraph:

> A plaintiff's complete withdrawal from the labor market constitutes a failure to mitigate damages.  Thus, if you find that plaintiff stopped seeking suitable employment and withdrew himself from the labor market, you should find that he failed to mitigate his damages and you should cut off any award of back pay to him as of the date that you find he withdrew from the labor market.

(Def. Proposed Jury Instructions at 25.)

[4]      See 1 Kevin F. O'Malley, Jay W. Grenig & William C. Lee, Federal Jury Practice and Instructions § 7.2 at 737 (6th ed. 2006) ("In drafting instructions, a common vice to be avoided is the phrasing of instructions in an argumentative fashion favorable to the side submitting them.  Instructions must be objective, not subjective."); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil 2d § 2552 at 392-93 (1995) ("A requested instruction should not be argumentative or one-sided.").  See also United States v. Matias, 836 F.2d 744, 750 (2d Cir. 1988) (court has a duty to give balanced jury instructions); Alaska Airlines v. Oszman, 181 F.2d 353 (9th Cir. 1950) (a party has no right to have jury charged upon every inference party thinks should be drawn from evidence adduced at trial and a court is not required to give instruction which would call attention more to a particular point in the case than to other party's theory of case).

a whole, properly appraised the jury of the plaintiff's duty to mitigate his losses and defendant's

burden of proving that plaintiff failed to do so.  The jury instruction as presented was neither

capable of confusing, nor misleading, the jury on this issue.

    Moreover, there is sufficient evidence in the record for the jury to find that

plaintiff made reasonable efforts under the circumstances to reduce his damages.  Plaintiff

testified that, after his termination in December 2001 at age fifty-eight, he applied for

unemployment compensation and expected to be called back to work once defendant obtained

more work.  (N.T. 3/20/07 at 189-90, 197-98; N.T. 3/21/07 at 46-47.)  After a period of time

passed, he looked in local newspapers for alternate employment, but was unable to find a

position that was compatible with his background.  (N.T. 3/20/07 at 193-94; N.T. 3/21/07 at 46.)

In March 2002, plaintiff attempted to start a business creating limited edition art pieces with his

cousin.  (N.T. 3/20/07 at 193; N.T. 3/21/07 at 42, 48.)  They spent several months developing

designs and prototypes, before abandoning the endeavor due to financial constraints.  (N.T.

3/20/07 at 193-94; N.T. 3/21/07 at 41.)  The court notes that self-employment constitutes

"employment" for the purposes of mitigating damages if establishing a business is a reasonable

alternative to finding other comparable employment.  See Carden v. Westinghouse Elec. Corp.,

850 F.2d 996, 1005 (3d. Cir. 1988).  Given the highly specialized industry in which plaintiff had

been employed and the limited number of employment opportunities available, it was not

unreasonable for plaintiff to attempt to establish his own business.  Eventually, in May 2002,

plaintiff elected to begin receiving his pension so that he could maintain his medical benefits.[5] (N.T. 3/20/97 at 198; N.T. 3/21/07 at 44, 48-49, 115-16.)

After reviewing the jury charge as a whole in light of the evidence in this case, the court concludes that the jury charge was not misleading or inaccurate such that the judgment should be altered or that a new trial be granted. The court did not commit an error of law by refusing to instruct the jury regarding the withdrawal component of defendant's argument on the mitigation issue. The court therefore denies defendant's request to amend judgment and for a new trial based on the jury charge.

**B.     Substantially Equivalent**

In connection with its argument that plaintiff failed to mitigate his losses, defendant argued at trial that the bargaining unit position offered to plaintiff prior to his termination was substantially equivalent to the job from which he was laid off. Presently, defendant contends that the jury's rejection of this proposition was contrary to the weight of evidence and a new trial should be granted. (Motion at 6-8.)

As noted supra, to meet its burden of proving a failure to mitigate, an employer must demonstrate that (1) substantially equivalent work was available, and (2) the claimant did not exercise reasonable diligence to obtain the employment. See Booker v. Taylor Milk Co., Inc. 64 F.3d 860, 864 (3d Cir. 1995); Tubari Ltd., Inc. v. NLRB, 959 F.2d 451, 454 (3d Cir. 1992). See also Caufield v. The Center Area School Dist., 133 Fed. Appx. 4 (3d Cir. 2005) (not precedential). "Substantially equivalent employment is that employment which affords virtually

---

[5]     Although he received medical benefits for six months after his termination, plaintiff had health concerns and did not want his medical benefits to lapse. (N.T. 3/20/97 at 198; N.T. 3/21/07 at 44, 46, 74-76.)

identical promotional opportunities, compensation, job responsibilities, and status as the position

from which the . . . claimant has been discriminatorily terminated." Booker, 64 F.3d at 866

(quoting Sellers v. Delgado College, 902 F.2d 1189, 1193 (5th Cir. 1990)).  However, the

plaintiff need not go into another line of work, accept a demotion, or take a demeaning position.

Caufield, 133 Fed. Appx. at *4 (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 (1982));

see Booker, 64 F.3d at 866 (same).

       Prior to his layoff, plaintiff was presented with a form that indicated that a union

job, Inspector Precision in the bargaining unit, would be offered to him.  (N.T. 3/20/07 at 187;

Ex. P-27.)  Plaintiff testified repeatedly that he felt humiliated and embarrassed to be offered the

Inspector Precision job, as it was a significant step down in status from his then-current position.

See e.g., N.T. 3/20/07 at 188-89, 198; 3/21/07 at 59, 98, 117.  Plaintiff last worked in such a

position in 1984, N.T. 3/21/07 at 230, and left the Precision Inspector position because "the job

was repetitious and . . . [he] had exhausted everything as far as learning what was going on in

that department and . . . [he] wanted to go further."  (N.T. 3/21/07 at 61.)  Furthermore, Theodore

Raftas, who was involved in the human resources function for plaintiff's department at the time

of plaintiff's termination, testified that he would have found plaintiff to be appropriately upset

with the Inspector Precision job offer.  (N.T. 3/16/07 at 67.)  Mr. Raftas testified that the job

offer presented to plaintiff was "ridiculous," "insulting" and "done without tact."  (N.T. 3/16/07

at 78.)  Mr. Raftas explained that plaintiff had been out of the bargaining unit for a long time and

that his skills and experience had advanced far beyond that required by the Inspector Precision

job.  (N.T. 3/16/07 at 67-68.)[6]  Moreover, the form by which defendant offered plaintiff the

Inspector Precision job indicates that the Inspector Precision position was "less than equivalent"

than the position from which he was to be terminated.  (N.T. 3/16/07 at 73-74; Ex. P-27.)

In addition, defendant argues that the Inspector Precision job would have provided

plaintiff with "nearly identical," if not higher, compensation than the position from which he was

terminated.  (Motion at 7-8.)  Defendant bases this conclusion on the assumption that plaintiff

testified that he routinely worked more than forty hours per week, and thus it is reasonable to

assume overtime when calculating plaintiff's projected compensation in the Inspector Precision

position.  (Motion at 8 n. 4.)  In fact, at trial plaintiff testified that he routinely worked sixty

hours per week as a Procurement Quality Specialist, but stated that he would have had great

difficulty working such hours in the Inspector Precision position.  (N.T. 3/20/07 at 252.)  With

regard to the Inspector Precision job, plaintiff testified:

> I don't know if I would have been able to sit at a little table looking at parts out of boxes for that amount of time, for sixty hours a week.  I doubt it very much.
>
> When I was working sixty hours a week, I was involved in so many projects, so many high profile projects that you didn't realize that you were working all of those hours.
>
> When you sit behind a desk – when you sit behind a workbench, and you got these little boxes coming through and you start counting widgets all day long, and you keep doing that, I don't know if I was going to be working no sixty hours a week doing that.

(N.T. 3/20/07 at 252.)

---

[6]    Mr. Raftas also testified that it might not have been feasible for plaintiff to obtain the Inspector Precision position because the union employee who would have been bumped from the Inspector Precision position would have been able to file a grievance and seek to retain his position through arbitration.  (N.T. 3/16/07 at 70-71, 105-06.)

Based upon the foregoing evidence, the jury reasonably concluded that the Inspector Precision job was not substantially equivalent to the job from which plaintiff had been terminated.  The jury's verdict does not result in a miscarriage of justice, nor does it "cr[y] out to be overturned or shock our conscience.'" See Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999).  Accordingly, defendant's motion for a new trial based upon the jury's conclusion that the Inspector Precision position offered to plaintiff was not substantially equivalent work is denied.

## C.     Reinstatement

After the jury returned its liability verdict finding that defendant wilfully violated the ADEA, defendant offered to reinstate plaintiff to the position which he held immediately prior to his layoff, Supplier Quality Specialist, Level 4.  Defendant argues that, if the court does not grant its motion for a new trial, reinstatement is the appropriate remedy rather than an award of front pay.  (Motion at 9-10.)

At the time his employment was terminated by defendant effective January 1, 2002, plaintiff was fifty-eight years old.[7]  Plaintiff was sixty-three years old as of the date of the jury's verdict and testified that he intended to retire at age sixty-five.  (N.T. 3/20/07 at 196.)  Accordingly, the jury's front pay award of $113,200 was calculated from the date of the jury's verdict until plaintiff's sixty-fifth birthday.  See Jury Interrogatory Form (Doc. No. 77).

The Third Circuit has held that back pay coupled with reinstatement is the preferred remedy in a discrimination case.  Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir. 1985).  However, reinstatement may not be feasible in all cases, such as when there exists

---

[7]      Plaintiff's date of birth is October 3, 1943.

irreparable animosity between the parties or because of the unavailability of a position with the

employer. Id. See also Blum v. Witco Chem. Co., 829 F.2d 367, 373-74 (3d Cir. 1987) (same).

When reinstatement is not appropriate, front pay is the alternate remedy. Feldman v.

Philadelphia Hous. Auth., 43 F.3d 823, 831 (3d Cir. 1994). This court has broad discretion in

determining whether reinstatement is appropriate. Id.

        The record demonstrates that the relationship between the parties has been

irreparably damaged as a result of the events leading up to plaintiff's termination, the termination

itself, and this litigation. It is clear from the evidence adduced at trial that plaintiff harbors

feelings of animosity toward defendant. Plaintiff testified that when he received an advance

notice of possible layoff on August 26, 2001, he was insulted and angry and refused to sign the

notice. (N.T. 3/20/07 at 180-81.) After receiving the advance notice of layoff, plaintiff

continued to perform his job because he believed that he would not ultimately be laid off from

employment with defendant. (N.T. 3/20/07 at 186-87.) In December 2001, however, plaintiff

received a Revalidation of Advance Notification of Layoff which indicated that plaintiff's

employment would be terminated effective January 1, 2002. (Ex. P-26.) Plaintiff testified that

he was angry that his employment was terminated after working for defendant for almost forty

years and he was angry about the way that defendant handled the termination.[8] (N.T. 3/20/07 at

_____

[8]        Plaintiff testified as follows:

        The last day that I was at Boeing only person said goodbye. I had forty years
        there, and I put all of my belongings in a cardboard box and that was it. It's all I
        had for forty years, some certificates in a cardboard box, and a lot of these papers
        stuffed in my pocket. When I went outside and I looked at The Boeing Company,
        I thought two-thirds of your life was dedicated to these people, and this is what
        you get. I'm sorry. I'm sorry for getting emotional.

191-93.)  Plaintiff indicated that he still becomes upset when he thinks about his termination.

(N.T. 3/20/07 at 193.)  Plaintiff also believes that defendant has acted in a hostile manner in

connection with the present litigation.  (N.T. 5/25/07 at 30-31, 42.)

    Moreover, the animosity between the parties stems from plaintiff's ranking in the

Redeployment Selection Process ("RSP") which ultimately resulted in plaintiff's layoff.  In

connection with the reduction-in-force in 2001, defendant ranked its employees pursuant to the

RSP.  (N.T. 3/16/07 at 53-58.)  Plaintiff was rated as the worst performing employee of forty-

three employees in the Supplier Quality Department.  (N.T. 3/19/07 at 243, 254-55; N.T. 5/25/07

at 14.)  Plaintiff was rated either a one or two, based on a scale of one to five with five being the

highest score, in the following categories: quality of work, leadership, attitude, communication

and teamwork.  (N.T. 3/19/07 at 244; Ex. P-19.)  Plaintiff explained that he "couldn't believe"

that he was ranked the lowest employee in his department and felt that the ranking demonstrates

hostility toward plaintiff.[9]  (N.T. 5/20/07 at 199-200; N.T. 5/25/07 at 42.)  Joseph Wood, who

primarily prepared plaintiff's ranking in the RSP, would be plaintiff's manager if the court were

to order plaintiff reinstated to employment with The Boeing Company.  (N.T. 3/19/07 at 148,

229, 243; N.T. 5/25/07 at 7.)

    Although Lawrence Weng testified on behalf of defendant that he was not aware

of any hostility toward plaintiff (N.T. 5/25/07 at 8-9), the court finds that there is irreparable

animosity between the parties.   "The irreparable animosity does not have to originate with the

_____

(N.T. 3/20/07 at 192.)

    [9]    Plaintiff testified that he first learned that he had been ranked the lowest employee
in his department in the RSP when preparing for the current litigation.  (N.T. 5/20/07 at 199.)

15

employer for front pay to be appropriately awarded." Bianchi v. City of Philadelphia, 80 Fed.

Appx. 232, 237 (3d Cir. 2003) (not precedential).  The relationship between plaintiff and

defendant has been irreparably damaged by the manner in which plaintiff's employment was

terminated and the ensuing litigation.  Due to the hostility between the parties, a continued

working relationship is not feasible and reinstatement is inappropriate.[10]  Given the foregoing, the

court finds appropriate the jury's front pay award that covers the approximately nineteen month

period from the date of the jury's verdict until plaintiff's sixty-fifth birthday.  See Bianchi, 80

Fed. Appx. at 237 (finding front pay award of thirteen years' salary reasonable); Berndt v. Kaiser

Aluminum & Chem. Sales, 789 F.2d 253, 261 (3d Cir. 1986) (upholding front pay award for the

four months remaining until the plaintiff retired).  Accordingly, defendant's motion to alter the

judgment to preclude an award of front pay is denied.

        An appropriate order follows.

                                   BY THE COURT:


                                   /s/ TJR
                                   THOMAS J. RUETER
                                   United States Magistrate Judge

---

[10]     The court notes that the jury found that the decision by defendant to terminate plaintiff's employment because of his age was willful discrimination and awarded liquidated damages.  See Jury Interrogatory Form (Doc. No. 77).

16