IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH J. TOMASSO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE BOEING COMPANY | : | NO. 03-4220 |

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                                                                September 21, 2007
United States Magistrate Judge

       Presently before the court is plaintiff's Motion to Mold Verdict (Doc. No. 81) (the "Motion"). Defendant filed a Memorandum of Law in Opposition to the Motion (Doc. No. 97) ("Def.'s Mem.") and plaintiff filed a reply thereto (Doc. No. 98). For the reasons stated herein, plaintiff's Motion is granted in part and denied in part.

**I.     BACKGROUND**

       Plaintiff Joseph J. Tomasso ("plaintiff"), filed the instant action against his former employer, defendant The Boeing Company ("defendant" or "Boeing"), alleging that defendant terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 261, et seq. The case was tried before a jury for five days, from March 16, 2007 through March 22, 2007.

       The jury returned a verdict in plaintiff's favor on the age discrimination claim, awarding back pay in the amount of $261,539 and front pay in the amount of $113,200. See Jury Interrogatory Form (Doc. No. 77). The jury also found in favor of plaintiff on the question of willful discrimination under the ADEA. Id. Accordingly, liquidated damages were awarded. Id. The court therefore entered judgment in favor of plaintiff and against defendant in the total

amount of $636,278 (Doc. No. 79).  The court held a hearing on plaintiff's Motion to Mold Verdict on May 25, 2007.

## II.	DISCUSSION

### A.	Prejudgment Interest

Plaintiff contends that he is entitled to receive prejudgment interest in the amount of $30,510 on the back pay portion of his jury award.  (Motion at Exs. B and C.)  Defendant argues that an award of prejudgment interest would be inequitable because plaintiff received unemployment compensation and pension benefits during the time period covered by the back pay award.  (Def.'s Mem. at 2-3.)

The decision whether to award prejudgment interest is within the sound discretion of the trial court.  Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995).  An award of prejudgment interest is compensatory in nature and is intended to make victims of discrimination whole.  Id.  "[I]t serves to compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had he not been unjustly discharged."  Id.  The Third Circuit has stated that prejudgment interest should be "given in response to considerations of fairness and denied when its exaction would be inequitable."  Id. (quoting Green v. USX Corp., 843 F.2d 1511, 1531 n.16 (3d Cir. 1988)).  The court further directed that there is "a strong presumption in favor of awarding prejudgment interest, except where the award would result in unusual equities."  Id. (citations omitted).  In addition, an award of both liquidated damages and prejudgment interest is permissible.  Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1102-03 (3d Cir. 1995).

To support his motion for prejudgment interest, plaintiff has submitted an

affidavit from his expert, Andrew C. Verzilli, M.B.A. (Motion at Exs. B and C.) Mr. Verzilli calculated the prejudgment interest rate using the method in O'Neill v. Sears, Roebuck, & Co., 108 F. Supp. 2d 443 (E.D. Pa. 2000) (calculating prejudgment interest by utilizing the T-bill rate available at the end of each year and compounding the interest yearly based on the amount of earnings that the plaintiff would have collected in that year, plus all the preceding years) and Jordan v. CCH, Inc., 230 F. Supp. 2d 603 (E.D. Pa. 2002) (vacated). While different methods for calculating prejudgment interest have been applied in this circuit, defendant does not contest the method used by plaintiff's expert. Rather, defendant argues that no award should be granted because doing so would be inequitable. (Def.'s Mem. at 2-3.)

This court is not persuaded by defendant's argument that "given the double recovery already permitted by the Court in allowing Plaintiff to collect both pension and back pay from Boeing for the same time period, as well as unemployment compensation . . . he has already been more than 'made whole' without any additional award of prejudgment interest." (Def.'s Mem. at 2-3.) Just as unemployment compensation and pension benefits are not to be deducted from a back pay award in order to preserve the ADEA's goal of make-whole relief, see McDowell v. Avtex Fibers, Inc., 740 F.2d 214, 217-18 (3d Cir. 1984), vacated and remanded on other grounds, 469 U.S. 1202 (1985); Anderson v. Consol. Rail Corp., 2000 WL 1622863, at *1 n.1 (E.D. Pa. Oct. 25, 2000), such benefits should not be utilized to offset an award of prejudgment interest. An award of prejudgment interest would compensate plaintiff for the loss of the use of money that he otherwise would have earned had he not been unjustly terminated by defendant and would not result in unusual equities. The Third Circuit has guided that a trial court "may exercise its discretion to depart from [the presumption in favor of awarding

3

prejudgment interest] . . . only when it provides a justification that reasonably supports the departure." See Booker, 64 F.3d at 868. In the present case, there is no justification for departing from the presumption.

Defendant was found to have intentionally discriminated against plaintiff and defendant has failed to provide a credible reason why it would be inequitable to award prejudgment interest on plaintiff's back pay award. Accordingly, plaintiff's Motion is granted with respect to his request for prejudgment interest and defendant shall pay plaintiff $30,510 prejudgment interest on the back pay award.

> **B.** **Negative Tax Consequences**

Plaintiff also requests the court to amend the judgment to include an award for negative tax consequences. (Motion at 4.) Plaintiff argues that he will sustain negative tax consequences "because his back pay will be paid in a lump sum, as opposed to having been spread out over the years since his layoff/termination." Id. Defendant contends that the Third Circuit Court of Appeals has not authorized such an award and there is no justification for granting plaintiff the damages he requests. (Def.'s Mem. at 4.)

The Third Circuit has not specifically addressed the issue of whether damages should be awarded to compensate a plaintiff for the negative tax consequences from an ADEA back pay award. In a recent non-precedential opinion, the Third Circuit refused to mold the jury's damage award to compensate for negative tax consequences. Gibson v. City of Paterson, 199 Fed. Appx. 133, 136 (3d Cir. 2006) (not precedential). The court noted that the "very few cases discussing this issue have found such treatment appropriate only when damages are for back-pay, resulting in disparate tax treatment between those wages, had they been paid when

4

owed, and their payment as a lump sum." Id. In Gibson, the plaintiff's damages were not for back pay, but rather were based on emotional pain and anguish. Id. at 136-37. Previously, in Gelof v. Papineau, 829 F.2d 452, 455-56 (3d Cir. 1987), the Third Circuit addressed the method used to calculate an element of damages intended to compensate the plaintiff for the increased tax burden resulting from a lump sum back pay award. However, the court refused to authorize an award to compensate for negative tax consequences in all back pay cases. Id. at 455 n.2 ("In light of Delaware's concession that the judgment should properly include the negative tax impact of a lump sum payment as an element of damages, we do not address the question of whether such an award should be made in all back pay cases.").

District courts in this circuit have both granted motions to mold verdicts on the basis of negative tax consequences and denied such motions. See Jordan v. CCH, Inc., 230 F. Supp. 2d 603, 617 (E.D. Pa. 2002) (vacated) (amending judgment to include an award for negative tax consequences); O'Neill v. Sears, Roebuck, & Co., 108 F. Supp. 2d 443, 446-48 (E.D. Pa. 2000) (amending judgment to include an award for negative tax consequences); Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 638 (E.D. Pa.1998) (denying motion to mold verdict to account for negative tax consequences), appeal dismissed on other grounds, 207 F.3d 176 (3d Cir. 2000); Shovlin v. Timemed Labeling Sys., Inc., 1997 WL 102523, at *2-3 (E.D. Pa. Feb. 28, 1997) (denying motion to mold verdict to account for negative tax consequences).

Plaintiff provided the court with an affidavit from his expert, Mr. Verzilli, which estimates that plaintiff will incur a negative tax consequence of $42,893. See Motion at Exs. B and C and Second Supplement to Plaintiff's Motion to Mold Verdict (Doc. No. 101). However, the court does not find compelling the argument that plaintiff must be awarded damages for the

5

increased tax burden in order to be made whole. Absent express direction from the Third Circuit that damages should be awarded to compensate a plaintiff for the negative tax consequences from an ADEA back pay award, this court is not inclined to award such relief.

Accordingly, plaintiff's Motion is denied with respect to his request for compensation for the negative tax consequences of the jury's award.

### C. Attorney Fees

Plaintiff submitted his attorney's computer generated records which support his request for reimbursement of attorney fees and costs in the amount of $330,481.37 in fees and $9,653.87 in costs. At the outset, the court notes that the plaintiffs' attorneys worked tenaciously for many years in securing an outstanding result for their client. This case was filed in 2003. The district judge, to whom the case was assigned, granted summary judgment for the defendant. Tomasso v. Boeing Co., 2004 WL 2646592 (E.D. Pa. Nov. 17, 2004). Plaintiff appealed to the Third Circuit Court of Appeals, which reversed in an opinion authored by the late Judge Becker, with a dissenting opinion written by Judge Roth. Tomasso v. Boeing Co., 445 F.3d 702 (3d Cir. 2006). After remand, the case was tried before the undersigned, upon consent of the parties. The differing opinions of the above judges as to the sufficiency of the evidence supporting plaintiff's claims demonstrate that plaintiff's chance of winning the case at trial was far from certain. The defense vigorously contested plaintiff's claims at trial.

Having prevailed on the merits, plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to 29 U.S.C. § 626(b). Blum v. Witco Chem. Corp., 888 F.2d 975, 983 (3d Cir. 1989). The party requesting attorney fees has the burden of demonstrating that the request is reasonable. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). To satisfy

this burden, the fee petition must "submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party challenging the fee petition must make specific objections that are sufficient to give fee applicants notice of the objections to the requested fees. Rode, 892 F.2d at 1183. "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id.

An attorney fee award is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Hughes v. Repko, 578 F.2d 483, 485 (3d Cir. 1978). The reasonable hourly rate multiplied by the reasonable hours is known as the lodestar. Generally, the lodestar is presumed to be the reasonable fee. However, the court "has the discretion to make certain adjustments to the lodestar." Rode, 892 F.2d at 1183.

### 1. Calculation of Lodestar

#### a. Reasonable Hours

In evaluating a fee petition, a court should exclude hours that are not reasonably expended. Id. "In determining what hours are reasonably expended on the suit, 'the most critical factor is the degree of success obtained . . . . Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.'" Blum, 829 F.2d at 378 (quoting Hensley, 461 U.S. at 435-36).

Plaintiff's attorneys seek compensation for a total of 924.10 hours, which consist of the labor of the following attorneys:

| | |
|---|---|
| Norman Perlberger | 328.08 |
| Gerald Jay Pomerantz | 85.50 |
| Mark S. Scheffer | 153.31 |
| Michael W. Jones | 357.21 |
| **TOTAL:** | **924.10 hours** |

Defendant makes several objections to the hours expended by counsel. The first objection is to the approximately 125-150 hours expended reviewing documents and meetings among co-counsel. Defendant argues that the entries supporting these hours are not specific and that "the nature of this case simply does not justify the devotion of so much time to document review and internal meetings." (Def.'s Mem. at 14). This court disagrees with defendant's argument that this case was simple or routine such that the hours plaintiff's attorneys spent reviewing documents and conferring with co-counsel were unreasonable. This case concerned a lay-off by the defendant. In implementing the reduction-in-force ("RIF"), Boeing utilized its Redeployment Selection Process ("RSP"), which was not discriminatory on its face. According to the RSP, defendant decided which employees to lay-off after management rated the employees' performance. Boeing ranked forty-three employees in the Supplier Quality Department by giving them scores in nine categories. Defendant ranked plaintiff as the worst employee, thus justifying his lay-off. See Tomasso, 445 F.3d at 705. In order to prove their case, plaintiff's attorneys had to review numerous records relating to Boeing's procedures for the RIF and the performance of the other forty-two employees. Furthermore, at various times during the

litigation – in preparation for a deposition or a court appearance, at summary judgment, on appeal and in preparation at trial – counsel again had to review the documents to refresh their recollection of the contents. <u>See</u>, <u>e.g.</u>, entries of 6/14/04, 9/9/04, 9/20/04, 3/30/05, 2/26/07. Thus, the number of hours spent reviewing these documents and conferring with co-counsel was not excessive.

Furthermore, the court will not deny compensation to plaintiff's counsel because the time entries were not more detailed. The computer-generated time sheets provided to the court do provide a description of the general nature of the activity, <u>e.g.</u>, "review docs." <u>See</u>, <u>e.g.</u>, entry 12/4/06. It was not practicable to describe each document that was reviewed by counsel in each time entry. The court credits counsels' representations that they expended this time reviewing documents and conferring with co-counsel regarding the case. The court rejects defendant's lack of specificity claim. <u>See</u> <u>Washington v. Philadelphia County Ct. of C.P.</u>, 89 F.3d 1031, 1038 (3d Cir. 1996) (rejecting claim that attorney fees should be denied because time entries were not specific and finding that computer-generated time sheets were sufficient).

Defendant's next objection is to Norman Perlberger's expenditure of forty hours to review the case in August - September, 2006 and twenty-five hours spent reviewing deposition transcripts in February, 2007. Defendant notes that prior to the appeal to the Third Circuit, the case was handled by Mark Scheffer, Esquire. After the case was remanded by the Third Circuit, the trial preparation was assumed by Mr. Perlberger who tried the case before this court. This court will not deny compensation to plaintiff's counsel for Mr. Perlberger's time. Even if Mr. Scheffer remained as trial counsel, he would have had to spend significant time prior to trial reviewing documents and deposition transcripts. Thus, Mr. Perlberger's time was not duplicative

or unnecessary. Given the successful result at trial, Mr. Perlberger's time reviewing the documents and deposition transcript was productive. Furthermore, it was not unreasonable to have Mr. Perlberger take over the file from Mr. Scheffer for trial since Mr. Perlberger had considerably more trial experience than Mr. Scheffer. As noted infra, Mr. Perlberger has been a member of the Bar for some thirty-five years; Mr. Scheffer was admitted approximately seventeen years ago. Mr. Perlberger's trial skills contributed to the favorable result for the plaintiff.

Defendant's next objection is to Mr. Scheffer's time preparing a summary judgment motion. According to defendant, this task should have been performed by Michael Jones, whose billing rate is lower than that of Mr. Scheffer. For the reasons stated below, this court will award the same hourly rate to both Messrs. Scheffer and Jones. Thus, this specific objection is overruled as moot.

Defendant also objects to the one to two hours spent by attorneys Pomerantz and Perlberger receiving training from this court's personnel on the use of the court's ELMO system, for the purpose of displaying documents to the jury. Because plaintiff's counsel did make extensive use of the ELMO system at trial, the court finds the time spent by counsel learning the system was reasonable and, accordingly, they will be compensated for this time.

Finally, defendant objects to the 24.5 hours billed by attorney Pomerantz for his time preparing for trial. Defendant objects to this time, arguing that it was unreasonable to bring Mr. Pomerantz into the case at the time of trial when Michael Jones, a younger associate, was unable to attend and assist Mr. Perlberger. The court sustains this objection in part. It is undisputed that Mr. Jones was unable to attend the trial. It was not unreasonable for Mr.

Perlberger to seek the assistance of another lawyer given the complexity of the case and also because defendant had engaged two lawyers to serve as trial counsel. The disputed hours consist of time when Mr. Pomerantz reviewed documents and consulted with co-counsel regarding strategy. The time does not appear to be excessive, and accordingly, the court will not deny compensation for these hours. However, as explained below, because Mr. Pomerantz acted in a capacity of a junior associate assisting Mr. Perlberger, he will not be awarded a senior partner hourly rate for these tasks.

### b. Hourly Rate

Plaintiff seeks the following hourly rates for his attorneys:

| Attorney | Rate |
|---|---|
| Norman Perlberger | $450 |
| Gerald Jay Pomerantz | $350 |
| Mark S. Scheffer | $350 |
| Michael W. Jones | $250 |

"The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035. Defendant contends that plaintiff has not provided evidence that the above rates are his lawyers' prevailing market rates. Because of this deficiency, Boeing argues that the court should award plaintiff's attorneys the schedule of rates promulgated by the Philadelphia Community Legal Services, Inc. ("CLS"). The Third Circuit has held that courts in their discretion may use the CLS Fee Schedule in fixing a reasonable hourly rate for counsel. See Maldonado v. Houstoun, 256 F.3d 181, 184, 187 (3d Cir. 2001) (CLS Fee Schedule is a fair reflection of the prevailing market rate in the Philadelphia area for civil rights cases). See also Bjorklund v. Phila. Housing Auth., 2003 WL 22988885, at

*2 (E.D. Pa. Nov. 20, 2003) (same), aff'd, 118 Fed. Appx. 624 (3d Cir. 2004).

Using the CLS Fee Schedule, an attorney with thirty-five years experience such as Mr. Perlberger commands an hourly rate of $325 to $410 (www.clsphila.org). Likewise, an attorney with thirty-seven years experience as Mr. Pomerantz would be entitled to a similar hourly rate. Id. See also Rapp v. Cameron, 2002 WL 254504, at *6 (E.D. Pa. Feb. 20, 2002) (awarding $350 an hour for attorney with over thirty years experience), aff'd, 775 Fed. Appx. 88 (3d Cir. 2003); Devore v. City of Philadelphia, 2004 WL 414085, at *2 (E.D. Pa. Feb. 20, 2004) (attorney with twenty-nine years experience awarded $350 per hour). Attorneys Scheffer and Jones were admitted to the Pennsylvania Bar in 1990 and each has seventeen years experience. According to the CLS Fee Schedule, an appropriate hourly rate is $275 to $315 (www.clsphila.org). However, plaintiff submitted no evidence with respect to the practice areas of Messrs. Scheffer and Jones or the rates at which their time is normally billed to clients. Apparently, Mr. Scheffer was a partner in the firm while Mr. Jones was an associate. However, the CLS Fee Schedule does not make a distinction between a lawyer's equity status in a law firm in determining an hourly rate. Id. Thus, for purposes of determining a reasonable hourly rate, the court will treat Messrs. Scheffer and Jones the same, even though Mr. Scheffer was a partner in the law firm and plaintiff claims that Mr. Scheffer's hourly rate is higher than that of Mr. Jones. Because both Mr. Scheffer and Mr. Jones have practiced law for the same number of years, and there is neither evidence of their historical billing rates nor their relative experience in employment discrimination cases, the court will award Mr. Scheffer the same hourly rate for which Mr. Jones is asking, i.e., $250 per hour. See Rapp, 2002 WL 254504, at *4 (reducing hourly rates because plaintiff presented no evidence of "when the attorneys graduated law school,

their areas of speciality, or the manner in which their time is normally billed to clients").

In the Verified Supplemental Affidavit of Sidney L. Gold, Esquire (Doc. No. 102), submitted by plaintiff, Mr. Gold opines that hourly rates of $350 per hour for Messrs. Perlberger, Pomerantz and Scheffer and $250 an hour for Mr. Jones are reasonable rates for the Philadelphia legal market.  Mr. Gold is a well-respected Philadelphia lawyer in the area of employment discrimination litigation and the court credits his opinion.  This Affidavit supports the validity of the CLS Fee Schedule and satisfies plaintiff's burden of proof that his attorneys' hourly rates are within the range of prevailing rates charged by Philadelphia attorneys. Washington, 89 F.3d at 1036 (affidavit which stated that hourly rate was reasonable and within the range of prevailing rates charged by Philadelphia attorneys with similar skill and experience satisfied plaintiff's burden of proof).  Accepting the testimony of Mr. Gold and applying the CLS Fee Schedule, the court finds reasonable hourly rates for attorneys Perlberger, Scheffer and Jones to be as follows:

| Norman Perlberger | $350 |
| Mark S. Scheffer | $250 |
| Michael W. Jones | $250 |

Given that Mr. Pomerantz acted in the role of supporting attorney for Mr. Perlberger and substituted for Mr. Jones, who was unavailable for the trial, the court will award Mr. Pomerantz the rate of $250 per hour, not the $350 per hour plaintiff requested.  This is not a negative reflection on Mr. Pomerantz's abilities as an attorney.  But in this trial, Mr. Pomerantz neither questioned a witness, nor presented argument to the court.  At trial, he merely assisted Mr. Perlberger in presenting documents to the jury via the ELMO system.  The Third Circuit has

held that it is appropriate for a court to award reduced hourly rates for an experienced attorney's services when the work in the case could have been performed by an associate-level attorney. In Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983), the court expressed its disapproval of "the wasteful use of highly skilled and highly priced talent for matters easily delegated to non-professionals or less experienced associates." The court stated that "[r]outine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." Id. Similarly, in In re Fine Paper Antitrust Litig., 751 F.2d 562, 591-93, 599 (3d Cir. 1984), the court found no abuse of discretion when the district court awarded reduced rates for a partner's services that represented associate-level work.

### 2. **Lodestar**

For all the above reasons, the court awards the following fees to plaintiff for the following attorney's work:

>Norman Perlberger (328.08 hours x $350) = $114,828
>
>Gerald Jay Pomerantz (85.50 hours x $250) = $21,375
>
>Mark S. Scheffer (153.31 hours x $250) = $38,327.50
>
>Michael W. Jones (357.21 hours x $250) = $89,302.50
>
>**TOTAL: $263,833.00**[1]

---

[1] The court denies plaintiff's request for the application of a contingency multiplier to the lodestar amount. See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 n. 121 (3d Cir. 1998) ("The Supreme Court has held risk enhancements are inappropriate in the statutory fee-shifting context.") (citing Burlington v. Dague, 505 U.S. 557 (1992)).

### D. Costs

Plaintiff has requested reimbursement for costs of $9,653.87, which appears to be reasonable. However, included in these costs are $2,989.20 already taxed against defendant by the Clerk of the U.S. Court of Appeals for the Third Circuit. As of the date of the hearing on May 25, 2007, the defendant had not paid these costs. Because the appellate court has already awarded costs for the appeal, the court will order defendant to pay $6,664.67, which is the balance.

### III. CONCLUSION

For all the above reasons, the court will order defendant to pay plaintiff the sum of $30,510 in prejudgment interest on the back pay award, $263,833 in attorney fees and $6,664.67 in costs.

An Amended Judgment Order will be entered by the court to add those amounts to that previously awarded by the jury.

BY THE COURT:

   /s/ TJR
THOMAS J. RUETER
United States Magistrate Judge